UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NORTH AMERICAN SPECIALTY
INSURANCE COMPANY,

    Plaintiff,

and

TRUCK INSURANCE EXCHANGE,

    Intervenor-Plaintiff,

vs.

BJORN G. OLSON BUILDING, INC., a
Washington corporation; BJORN G.
OLSON, an individual; PEMBERTON
CREEK CONDOMINIUMS
ASSOCIATION, a Washington nonprofit
corporation,

    Defendants.

CASE NO. C07-5583BHS

ORDER DENYING
PLAINTIFF'S FIRST MOTION
FOR SUMMARY JUDGMENT

This matter comes before the Court on Plaintiff's First Motion for Summary Judgment (Dkt. 68). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On October 22, 2007, Plaintiff North American Specialty Insurance Company ("North American") filed a complaint for declaratory relief and reformation against

ORDER - 1

1  Defendants Bjorn G. Olson Building, Inc. ("Olson Building"), Bjorn G. Olson ("Olson"),
2  and Pemberton Creek Condominiums Association. Dkt. 1.
3       On April 23, 2009, Plaintiff filed a First Motion for Summary Judgment. Dkt. 68.
4  On May 15, 2009, Defendants Olson Building and Olson responded and moved to strike
5  some materials that Plaintiff filed in support of its motion. Dkt. 78. On May 22, 2009,
6  Plaintiff replied. Dkt. 86.

## II. FACTUAL BACKGROUND

### A.  Insurance Policies

This dispute involves two insurance policies issued by Plaintiff to Defendant Bjorn G. Olson Building, Inc. The policies are as follows: Policy No. BXG0002394-00, effective June 30, 2002 – June 30, 2003 ("First Policy"), and Policy No. BXG0002394-01, effective June 30, 2003 – June 30, 2004 ("Second Policy"). Dkt. 70. Declaration of Jerriann Pope ("Pope Decl."), Exhs. 1 and 2 ("Policies"). Plaintiff claims that although "Both Policies include Designated Work Exclusion Endorsements precluding coverage for the insured's work on condominiums," the First Policy's exclusion "contains a computer-generated printing error." Dkt. 68 at 6. The First Policy's exclusion reads as follows:

> THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
>
> EXCLUSION - DESIGNATED WORK
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
>
> SCHEDULE
>
> Description of your work:
>
> The design manufacture, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service correction or replacement of an 'exterior insulation and finish system' (commonly referred to as synthetic stucco) or any part thereof, or any substantially similar system or any part thereof, including the application or use of

ORDER - 2

conditioners, primers, accessories, flashing, coatings, caulking or sealant in connection with such a system.

Any work or operations with respect to any exterior component, fixture or feature of any structure if an 'exterior insulation and finish system' is used on any part of that structure.

This exclusion applies to 'your work' described in Paragraph 1. or Paragraph 2. Above performed by you or on your behalf.

For the purpose of this endorsement, an 'exterior insulation and finish system' means an exterior cladding or finish system used on any part of any structure and consisting of:
    a.    a rigid or semi-rigid insulation board made of expanded polystyrene or other materials;
    b.    the adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;
    c.    a reinforced base coat; or
    d.    a finish coat providing texture and color.

Condominium: a multiunit dwelling, each of whose residents, known as unit owners, enjoy exclusive ownership of his individual apartment or unit, holding a fee simple title thereto, while retaining an individual interest, as a tenant in common, in the common facilities and areas of the building and grounds which are used by all residents.

Co-Operative: a multi-unit dwelling in which each resident has (1) an interest in the entity owning the building and (2) a lease entitling him to occupy a particular apartment within the building.

Pope Decl., Exh. 1 at 2.

With regard to the claimed error, Plaintiff asserts as follows:

> Note that although the endorsement is clearly labeled Exclusion – Designated Work, and it describes certain "work" in the Schedule, it does not contain language effectuating the intent of the label with respect to the Schedule. In other words, it does not say, in essence, "there is no coverage for liability arising out of the work described in the schedule." So the Endorsement is clearly missing something. This is the printing error. Also, it is apparent that the printing error relates to the body of the endorsement, because although there is a reference to "Paragraph 1. or Paragraph 2. above," there are no numbered paragraphs above that reference.

Dkt. 68 at 8.

The Second Policy's exclusion reads as follows:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

EXCLUSION - DESIGNATED WORK

This endorsement modifies insurance provided under the following:

ORDER - 3

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

SCHEDULE

Description of your work:

    1.    Arising out of the design manufacture, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service correction or replacement of an "exterior insulation and finish system" (commonly referred to as synthetic "stucco") or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashing, coatings, caulking or sealant in connection with such a system.
        a.    a rigid or semi-rigid insulation board made of expanded polystyrene or other materials;
        b.    the adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;
        c.    a reinforced base coat; or
        d.    a finish coat providing texture and color.

    2.    Arising out of any work or operations with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system" is used on any part of that structure.

    3.    Arising out of the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction, or replacement of any part of a "condominium project" and/or "community apartment/co-operative project" and/or "commercial construction".

    4.    Arising out of the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction, or replacement of any structure, not otherwise excluded by this endorsement, which exceeds (3) stories and four units per building.
        a.    For the purpose of this endorsement, "condominium project" means:
            i.    A development consisting of condominiums. A condominium consists of an undivided interest in common in a portion of real property coupled with a separate space called a unit.
        b.    For the purpose of this endorsement "community apartment/co-operative project" means:
            i.    A development in which an undivided interest in land is coupled with the right of exclusive occupancy of any apartment located thereon.
        c.    For the purpose of this endorsement, "commercial construction" means:
            i.    The construction of any structure which is not built to be sold as a detached single-family residence. This would include but not be limited to an apartment complex.

This exclusion applies to "your work" described above performed by you or on your behalf.

> This insurance does not apply to "bodily injury", "property damage", "personal injury", or "advertising injury" included in the "products completed operations hazard" and arising out of "your work" shown in the schedule.

Pope Decl., Exh. 2 at 2.

## B. The Underlying Action

On February 13, 2007, the Pemberton Creek Condominiums Association filed an action against Defendants Olson and Olson Building in the Pierce County Superior Court in and for the State of Washington ("Underlying Action"). Dkt. 71, Declaration of Joseph D. Hampton, Exh H ("Underlying Compliant"). In its complaint, plaintiff alleges that the Project suffers from a multitude of construction defects including: poured concrete against the siding; concrete in contact with wood sheathing causing leaks and damage; flashings not installed; improper installation of siding causing buckling; improper installation of weather-resistant barrier; improper flashings at windows; lack of or improper metal head flashing at windows; exposed framing; unprimed wood trim, wood sheathing exposed to the elements; improper roof overhand; defective flatwork; poor site drainage; questionable structural integrity of retaining rock and keystone walls; potentially improper seismic strapping; inadequate repair; substantial deflection and squeaking of floors; inadequate and unsupported floor supports in crawl spaces; and the failure of the building to conform with plans and specifications. *Id.*

Plaintiff claims that it is entitled to recover from Olson Building and/or its principals (1) the cost of investigating and developing a scope of repair for the Project; (2) the cost of repair; (3) management costs associated with repairs; (4) loss of use and enjoyment; (5) loss in market value; (6) trebled damages under the Washington Condominium Act in the statutory maximum amount of $10,000; (7) attorneys' fees and costs; and (8) other relief deemed just and equitable by the Court. *Id.*

Plaintiff claims that "Olson Building tendered notice of the Underlying Action to [Plaintiff], seeking defense and indemnity against the allegations raised therein." Dkt. 68

ORDER - 5

1 at 12. Plaintiff tendered a defense under a reservation of rights and this action for
2 declaratory relief and reformation followed.

## III. DISCUSSION

**A.     Defendants' Motions to Strike**

Plaintiff has submitted material that it claims evidences the intent of the parties at the time of contract formation. Defendants Olson Building and Olson move to strike (1) all insurance application materials submitted in support of Plaintiff's motion for summary judgment, (2) certain portions of the Pope Declaration, and (3) all reference to and argument supported by the application materials contained in Plaintiff's motion for summary judgment and memorandum in support of that motion. Dkt. 78 at 2.

**1.     Insurance Application Materials**

Defendants argue that Washington's attachment statute prohibits Plaintiff from introducing as evidence its application for insurance, a questionnaire regarding the insurance policy, and all testimony relating to the application because this material was neither physically attached to the Policies nor referenced or incorporated into the Policies. Dkt. 78 at 2. The relevant portion of Washington's attachment statute reads:

> No application for the issuance of any insurance policy or contract shall be admissible in evidence in any action relative to such policy or contract, unless a true copy of the application was attached to or otherwise made a part of the policy when issued and delivered.

RCW 48.18.080(1).

In this case, Plaintiff first argues that RCW 48.18.080 is a state procedural law and is not applicable in this federal action. Dkt. 86 at 3. Plaintiff is correct that a federal court sitting in diversity applies federal procedural laws and state substantive laws. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Plaintiff is also correct that a law is considered substantive if it is outcome-determinative. *Hanna v. Plumer*, 380 U.S. 460 (1965). Plaintiff, however, fails to convince the Court that failure to apply the state rule would not affect the outcome of the case.

Next, Plaintiff cites *Cutter & Buck, Inc. v. Genesis Ins. Co.*, 306 F. Supp. 2d 988 (W.D. Wash. 2004), for the proposition that the Court should not exclude documents that contain only information provided by the insured. In *Cutter & Buck*, Judge Pechman concluded that "RCW 48.18.080(1) does not bar admission of unattached oral or written representations in determining if rescission is warranted under RCW 48.18.090(1)." *Id*. at 1000. While the Court agrees with Judge Pechman that RCW 48.10.080(1) does not bar unattached oral or written representations, the statute still clearly bars the Court from considering the application for insurance.

Plaintiff's next argument is that the application was "made a part of the policy" under RCW 48.10.080(1). Plaintiff cites a specific portion of the policy that states that it "issued [the] policy in reliance upon [the insured's] representations." Dkt. 86 at 6. The Court is not persuaded that the broad term "representations" should be interpreted to mean that "a true copy of the application was . . . otherwise made a part of the policy when issued and delivered." Therefore, the Court grants Defendants' motion and will strike the insurance application and all reference to, or arguments regarding, the content of the application.

With regard to any oral representations concerning Defendants' intent to enter into the insurance contracts, Defendants argue that portions of Ms. Pope's declaration are inadmissable hearsay. Defendants challenge the following statements:

> 7. Susie Nelson, Century Insurance Services, LLC, and, accordingly, Bjorn G. Olson and Olson Building, was aware that policies issued via the Asset Protection Program, including the foregoing Policies, did not include coverage for liability arising from the insured's work on condominiums.
> ***
> 13. There is no question that the insured, and all other parties to the subject Policies, understood that the insured had applied for and would receive Policies of insurance through [Plaintiff] that would preclude coverage for liability arising from the insured's work on condominiums.

Pope Decl. The Court finds that these statements are inadmissible because, as a lay witness, Ms. Pope lacks personal knowledge as to what either Ms. Nelson or Defendants were "aware" of or "understood." *See* Fed. R. Evid. 602. Therefore, the Court grants

1 Defendants' motion as to these statements. Plaintiff, however, is not precluded from offering similar evidence at trial, upon proper foundation, regarding the admissions of an agent of a party-opponent.

**B.     Summary Judgment**

   **1.     Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at

trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

### 2. Plaintiff's Motion

Plaintiff requests that the Court

> issue an Order (1) granting reformation of the First Policy to reflect the actual understanding and intent of the parties: (2) declaring that neither the First Policy nor Second Policy provides coverage for the claims brought against Olson Building in the Underlying Action; and (3) that [Plaintiff] acted properly by defending Olson Building and then bringing this coverage action.

Dkt. 68 at 21.

#### a. Reformation

Plaintiff first argues that the Court should reform the First Policy due to a scrivener's error. Dkt. 68 at 15-20.

"It is well settled that a court in equity may reform a contract to correct a scrivener's error." *Reynolds v. Farmers Ins. Co. of Washington*, 90 Wn. App. 880, 885 (1998) (citing *Geoghegan v. Dever*, 30 Wn.2d 877, 889 (1948)).

> In contract law, a scrivener's error, like a mutual mistake, occurs when the intention of the parties is identical at the time of the transaction but the written agreement does not express that intention because of that error. This permits a court acting in equity to reform an agreement.

*In re Estate of Harford*, 86 Wn. App. 259, 264 (1997). The person asserting mutual mistake must prove by "'clear, cogent, and convincing evidence'" that both parties to the contract were mistaken. *In re Marriage of Schweitzer*, 132 Wn.2d 318, 328 (1997) (quoting *Bergstrom v. Olson*, 39 Wn.2d 536, 543 (1951)). However, factual disputes regarding the intent of the parties at formation should be left to the fact finder. *Bort v. Parker*, 110 Wn. App. 561, 579 (2002).

In this case, Plaintiff argues that the evidence shows that, at the time of contract formation, the parties intended to exclude coverage for condominiums. For example,

ORDER - 9

1 Defendant Olson stated on the Contractors' Questionnaire that the projected number of
2 condominiums that he would be building was zero. Hampton Decl., Exh. C at 2.
3 Defendant Olson also admitted that he either drafted or authorized a letter informing the
4 Pemberton Creek Condo Owners that he had not procured builder's risk insurance that
5 would cover condominium insurance. *Id*., Exh. E at 2. While it may be reasonable to
6 infer that Defendants intended to exclude coverage for condominiums from the insurance
7 contract, this is neither the only reasonable inference that may be drawn from the
8 evidence before the Court nor conclusive "as to whether a scrivener's error affected the
9 contract." *See Bort*, 110 Wn. App. at 579. The language of the contract speaks for itself
10 and, as Plaintiff admits, "makes the intent of the parties less clear." Dkt. 68 at 20.
11 Therefore, the Court is not persuaded that, at this time, a finding of fact should be entered
12 that there exists clear, cogent, and convincing evidence that, at the time of formation of
13 the First Policy, Defendants intended to exclude coverage for condominiums.

14 Plaintiff also argues that a mutual mistake is "clearly shown." Dkt. 86 at 11.

> A contract is voidable on grounds of mutual mistake when both parties independently make a mistake at the time the contract is made as to a basic assumption of the contract, unless the party seeking avoidance bears the risk of the mistake.

18 *Bennett v. Shinoda Floral, Inc*., 108 Wn.2d 386, 396 (1987). In this case, Plaintiff's
19 argument of mutual mistake fails for at least two reasons. First, there is a question of fact
20 whether Defendants made a mistake at formation. Second, Plaintiff has failed to show
21 that it does not bear the burden of this mistake.

22 Therefore, the Court denies Plaintiff's motion for summary judgment on the issue
23 of reformation of the First Policy based on the theories of scrivener's error or mutual
24 mistake.

### b. Coverage

26 Plaintiff requests that the Court issue a declaration that neither the First Policy nor
27 the Second Policy provides coverage for the Underlying Action. With respect to the First

Policy, the Court declines, at this time, to reform the contract to include the requested exclusion of coverage.

With respect to the Second Policy, Plaintiff argues that it "clearly and unambiguously bars coverage . . . ." Dkt. 68 at 14. Defendants counter that the exclusion is unenforceable because Plaintiff did not give them notice of the exclusion before renewal of the policy as required by RCW 48.18.2901. Dkt. 78 at 15-18. Viewing the facts in the light most favorable to Defendants, the Court agrees with Defendants that notice of a change in the insurance contract provisions was required.

Therefore, the Court denies Plaintiff's motion for summary judgment on this issue.

### c. Acted Properly

Plaintiff argues that "[h]aving acted properly and living up to its obligations, [it] is entitled to an Order summarily dismissing the Olson Defendants' counterclaims against it." Dkt. 68 at 21. Plaintiff has failed to show that, at this time, it is entitled to this request for relief. Therefore, the Court denies Plaintiff's motion for summary judgment on this issue.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Plaintiff's First Motion for Summary Judgment (Dkt. 68) is **DENIED**.

DATED this 15th day of July, 2009.

_____
BENJAMIN H. SETTLE
United States District Judge