UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NORTH AMERICAN SPECIALTY INSURANCE COMPANY,

    Plaintiff,

and

TRUCK INSURANCE EXCHANGE,

    Intervenor-Plaintiff,

vs.

BJORN G. OLSON BUILDING, INC., a Washington corporation; BJORN G. OLSON, an individual; PEMBERTON CREEK CONDOMINIUMS ASSOCIATION, a Washington non-profit corporation,

    Defendants.

CASE NO. C07-5583BHS

ORDER GRANTING IN PART AND DENYING IN PART INTERVENOR-PLAINTIFF TRUCK INSURANCE EXCHANGE'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Intervenor-Plaintiff Truck Insurance Exchange's Motion for Summary Judgment (Dkt. 75). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On October 22, 2007, Plaintiff North American Specialty Insurance Company ("North American") filed a complaint for declaratory relief and reformation against Defendants Bjorn G. Olson Building, Inc., Bjorn G. Olson, and Pemberton Creek Condominiums Association. Dkt. 1.

ORDER - 1

On January 14, 2008, Truck Insurance Exchange ("Truck") filed a Motion to Intervene. Dkt. 22. On February 4, 2008, the Court granted the motion. Dkt. 40. On February 6, 2008, Truck filed an Intervenor Complaint for Declaratory Relief. Dkt. 42 ("Complaint").

On May 6, 2009, Truck filed a Motion for Summary Judgment. Dkt. 75. On May 15, 2009, Defendants Bjorn G. Olson Building, Inc., and Bjorn G. Olson responded. Dkt. 78. On May 28, 2009, Truck replied. Dkt. 88.

## II. FACTUAL BACKGROUND

### A. Insurance Policies

Truck issued to Bjorn G. Olson Building, Inc. ("Olson Building") a commercial general liability insurance policy, Policy Number 60054-75-32 ("Policy"). Complaint, ¶ 3.1; *see also id*. Ex. A. The Policy period was from June 1, 2001 to June 1, 2002. *Id*. The Policy was extended to July 1, 2002. *Id*.

Under "Section 1 - Coverages," the Policy provides coverage for a bodily injury and property damages as follows:

> 1. Insuring Agreement.
> A. We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies.
> * * *
> B. This insurance applies to . . . "property damage" only if:
> (1) The . . . "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
> (2) The . . . "property damage" occurs during the policy period.

Policy, Commercial General Liability at 1.

The Policy includes an endorsement that limits the policy and changes its definitions. The endorsement provides in part as follows:

> 2. Definition 12. "Occurrence" is replaced with:
> 12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in . . . "property damage" that first occurs during the policy period and is neither expected nor intended by any "insured" . . . . "Property damage" first occurs during the policy period only if:

ORDER - 2

a.      The . . . "property damage" is first sustained by
a person or entity during the policy period as the direct result of an
accident that first occurs during the policy period; and/or
                    b.      "Property damage" actually is, or reasonably
should be, first apparent during the policy to any "insured, additional
insured or any claimant."

          3.      Definition [17.] "Property damage" is replaced with:
          [17.]   "Property damage" means:
                    a.      Physical injury to tangible property, including
all resulting loss of use of that property which first occurs during the
policy period. All such loss of use shall be deemed to occur at the
time of the physical injury that caused it (emphasis added); or
                    b.      Loss of use of tangible property that is not
physically injured provided such loss of use is caused by an
"occurrence" that first takes place during the policy period. All such
loss of use shall be deemed to occur at the time of the "occurrence"
that caused it (emphasis added).

*Id*., Amendment of Policy at 1.

Within the Policy, the term "your work" is defined as follows:

          21.     "Your work" means:
                    a.      Work or operations performed by you or on your behalf; and
                    b.      Materials, parts or equipment furnished in connection with
such work or operations.

                    "Your Work" includes:
                    a.      Warrantees or representations made at any time with respect
to the fitness, quality, durability, performance or use of "your work" . . . .

*Id*., Commercial General Liability at 13.

**B.      The Underlying Action**

On February 13, 2007, the Pemberton Creek Condominiums Association filed an action against Defendants Olson and Olson Building in the Pierce County Superior Court in and for the State of Washington ("Underlying Action"). Dkt. 71, Declaration of Joseph D. Hampton, Exh H ("Underlying Compliant"). In their complaint, plaintiff alleges that the Project suffers from a multitude of construction defects including: poured concrete against the siding; concrete in contact with wood sheathing causing leaks and damage; flashings not installed; improper installation of siding causing buckling; improper installation of weather-resistant barrier; improper flashings at windows; lack of or improper metal head flashing at windows; exposed framing; unprimed wood trim, wood

ORDER - 3

sheathing exposed to the elements; improper roof overhand; defective flatwork; poor site drainage; questionable structural integrity of retaining rock and keystone walls; potentially improper seismic strapping; inadequate repair; substantial deflection and squeaking of floors; inadequate and unsupported floor supports in crawl spaces; and the failure of the building to conform with plans and specifications. *Id.*

Plaintiff claims that it is entitled to recover from Olson Building and/or its principals, (1) the cost of investigating and developing a scope of repair for the Project; (2) the cost of repair; (3) management costs associated with repairs; (4) loss of use and enjoyment; (5) loss in market value; (6) trebled damages under the Washington Condominium Act in the statutory maximum amount of $10,000; (7) attorneys fees and costs; and (8) other relief deemed just and equitable by the court. *Id.*

Truck claims that in "February or March of 2007, Olson tendered defense of the state defect action to Ruck." Dkt. 75 at 3. It also claims that it accepted defense of the Underlying Action under a complete reservation of rights.

**C.  Condominium Sales**

The parties agree that only seven units of the Pemberton condominiums were sold before the date of July 1, 2002. Dkt. 75 at 3; Dkt. 84 at 1.

### III. DISCUSSION

**A.  Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec.*

1 *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     Interpretation of Insurance Policies**

Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), "federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law." *Gasperini v. Center for Humanities*, Inc., 518 U.S. 415, 427 (1996). In Washington, interpretation of an insurance contract is a question of law. *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 110 P.3d 733, 737 (2005). Insurance policies are construed as contracts. *Id*. The policy is considered as a whole and it is given a "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Id*. "[I]f the policy language is clear and unambiguous, [the court] must

enforce it as written; [the court] may not modify it or create ambiguity where none exists." *Id*. A clause is ambiguous only "when, on its face it is fairly susceptible to two different interpretations, both of which are reasonable." *Id*.

**C.      Truck's Motion**

Truck requests that the Court enter an order in its favor

> declaring that, under the terms of the Policy, coverage is limited to property damage that (1) occurred during the Policy period of June 1, 2001 to July 1, 2002 as extended, and (2) occurred to property that was not owned by the insured.

Dkt. 75 at 4.

### 1.      Coverage Period

The parties dispute whether, if the Policy was triggered during the Policy period, Truck remained "on the risk" for property damage that may have occurred past the expiration date of the Policy.

Washington has adopted the continuous trigger rule for insurance coverage in cases involving undiscovered, progressively worsening conditions causing injury or damage. Thus, when an insured, who is insured by multiple insurers, is responsible for damages that occurred over several policy periods, every policy in force throughout the injury-causing process is triggered and the insurers are jointly and severally liable for the entire amount, minus deductibles, of the loss. *Gruol Constr. Co. v. Ins. Co. of N. Am.*, 11 Wn. App. 632, 637 (1974) (holding that burden of apportionment, between insured and insurers, is on the insurers, and that absent a showing of apportionment, joint and several liability is proper); *see also Am. Nat'l Fire Ins. Co. v. B & L Trucking & Constr. Co.*, 134 Wn.2d 413, 424 & n. 4 (1998).

In this case, Truck argues that the Policy includes language that limits the scope of insurance coverage to damage that occurred only during the period of the Policy. Specifically, Truck cites a phrase in the Policy that states: "This insurance applies to . . . 'property damage' only if: . . . [the] 'property damage' occurs during the policy period." Policy, Commercial General Liability at 1, section 1(B)(2). This language is clear and

ORDER - 6

unambiguous. Moreover, the language appears to indicate that Truck intended a pro rata allocation of loss in the event of a continuous trigger. However, under Washington law, insurers may be liable for uncovered losses.

In Washington, the "efficient proximate cause" rule "applies where a covered peril sets in motion a casual chain the last link of which is an uncovered peril." *Key Tronic Corp., Inc. v. Aetna (CIGNA) Fire Underwriters Ins. Co.*, 124 Wn.2d 618, 625 (1995). "The rule cannot be circumvented by an exclusionary clause; an exclusionary clause drafted to circumvent the rule will not defeat recovery." *Id*. at 626. In this case, Defendants argue that, "as a matter of law, the insurer remains on the risk for all property damages occurring outside the policy period so long as that subsequent damage was proximately caused by a covered loss." Dkt. 84 at 8. Applied to the facts of this case, Defendants argue that, even if there was no coverage under the Policy for damages that occurred outside the policy period, Truck may still be "on the risk" for such damages.

On the other hand, Plaintiff argues that the "efficient proximate cause" rule "simply does not apply to this case." Dkt. 88 at 4. It claims, without citation, that the "doctrine only applies to covered and uncovered perils and the applicability of exclusions." *Id*. The Court is not persuaded that the rule would not apply if covered property damage set in motion a causal chain, the last link of which was uncovered property damage. In other words, the Court is unaware of any authority holding that the uncovered peril must occur during the policy period.

Therefore, the Court denies Plaintiff's motion for summary judgment on the issue of whether coverage under the Policy is limited to property damage that occurred during the policy period of June 1, 2001 to July 1, 2002 as extended.

**2. Covered Property**

With regard to the second portion of Plaintiff's request, Defendants "do not disagree" that Truck's exposure is "limited to the seven units sold as of July 1, 2002." Dkt. 84 at 1. Defendants, however, do disagree with Plaintiff's request that the Court apply a "percentage approach" to determine Truck's indemnity obligation.

In *State Farm Fire & Cas. Co. v. English Cove Ass'n, Inc.*, 121 Wn. App. 358 (2004), the Washington Court of Appeals addressed the issue of apportionment under an "owned property" exclusion when the insured owned only 43 of the 160 units at the condominium complex. *Id.* at 360. Although the court remanded the matter so that the trial court could "determine the basis of allocation of loss," it also "discussed at least one reasonable basis for allocation of the loss between damage that is covered and that which is not." *Id.* at 370-72.

In this case, Plaintiff requests that the Court enforce that "one reasonable basis." Dkt. 75 at 6-7. Defendants argue that numerous issues of fact remain regarding damage, ownership, and apportionment. Dkt. 84 at 14-18. Defendants also argue that the *English Cove* decision merely provided a suggested method of apportionment and not a required method. The Court agrees and considers the *English Cove* method a reasonable basis for allocation that may be utilized at trial but is inappropriate to mandate at this point of the proceeding.

Therefore, the Court denies Plaintiff's motion for summary judgment on the issue of whether coverage is limited by a percentage basis of apportionment between what the insured owned and that which it did not own.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Intervenor-Plaintiff Truck Insurance Exchange's Motion for Summary Judgment (Dkt. 75) is **GRANTED in part** and **DENIED in part**. The Court **GRANTS** the motion only as to the non-disagreement between the parties that Plaintiff's coverage is limited to the seven units sold as of July 1, 2002.

DATED this 16th day of July, 2009.

BENJAMIN H. SETTLE
United States District Judge